BOARD OF TRUSTEES for the City of Little Rock Police
Department Pension and Relief Fund *v.* Mark STODOLA,
Prosecuting Attorney; City of Little Rock, Arkansas; Pulaski
County, Arkansas; Colonel Tommy Goodwin, Director of the
Arkansas State Police; and Jimmie Lou Fisher, Treasurer of the
State of Arkansas

96-948                                          942 S.W.2d 255

Supreme Court of Arkansas
Opinion delivered April 21, 1997

*Edward G. Adcock* and *Tell Hulett*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Patricia Van Ausdall*, Asst. Att'y Gen., for appellees Mark Stodola, Colonel Tommy Goodwin, and Jimmie Lou Fisher.

*Office of the City Attorney*, by: *Thomas M. Carpenter*, for appellee City of Little Rock, Arkansas.

*Pulaski County Attorney's Office*, by: *Pat Crossley*, and *Stephen Cobb*, for appellee Pulaski County, Arkansas.

ROBERT L. BROWN, Justice. Appellant Board of Trustees for the City of Little Rock Police Department Pension and Relief Fund (Board) sued for a judgment declaring that certain proceeds from property seized or forfeited in drug-trafficking cases be paid into the city's police pension fund. Named in the suit as defendants were the City of Little Rock, Pulaski County, the prosecuting attorney for the Sixth Judicial District, the director of the Arkansas State Police, and the State Treasurer. At issue is the interpretation of two Arkansas statutes, one which deals with confiscated goods in a city (Ark. Code Ann. § 24-11-415 (Repl. 1996)), and one dealing with forfeited property in drug cases (Ark. Code Ann. § 5-64-505(k) (Repl. 1993)). The trial court ruled that § 5-64-505(k) controls. We agree and affirm.

On May 13, 1994, the Board filed its complaint against the appellees and sought a judgment declaring that § 24-11-415 be construed in conjunction with § 5-64-505(k) to require that proceeds from personal property forfeited under the Uniform Controlled Substances Act be paid into the city's police pension fund. The Board alleged that no proceeds derived from the sale of goods forfeited under the Uniform Controlled Substances Act were being paid into the fund. The Board also sought an accounting of moneys to which it was entitled and attorneys fees.

The answer filed by the prosecutor, State Police Director, and State Treasurer denied that money derived from the sale of goods forfeited under § 5-64-505(k) had to be paid into the city's police pension fund under § 24-11-415. They further asserted that the two statutes were in conflict and could not be construed harmoniously. Additionally, they maintained that the Board had failed to state facts upon which relief could be granted.

The City of Little Rock filed its answer and specifically denied that the city's police pension fund was underfunded and otherwise denied that the Board was entitled to relief. Pulaski

County answered in the same vein and moved for a dismissal under Ark. R. Civ. P. 12(b)(6).

The Board next moved for partial summary judgment on the construction of the two statutes in question and urged that there were no genuine issues of material fact. It sought a declaration that it was to receive the proceeds from the sale of assets seized or forfeited in the city under § 5-64-505(k). The crux of the Board's argument was that the two statutes could be read together and harmoniously because § 5-64-505(k) concerned how funds were to be acquired through forfeiture and sale, while § 24-11-415 directed how the proceeds derived from the sale of confiscated goods should be distributed.

Appellees responded with myriad reasons for interpreting the two statutes as antagonistic to each other. In their responses, they argued: (1) that the later statute, § 5-64-505(k), would control over the former, § 24-11-415; (2) that the more specific statute, § 5-64-505(k), which concerns items forfeited under the Uniform Controlled Substances Act and provides for distribution of those proceeds to Drug Control Funds for law enforcement and prosecutorial purposes, governs the more general statute, § 24-11-415, which has no limitation on the proceeds to be paid into the fund; and (3) that the intent of the General Assembly would be thwarted in that the funds received under § 5-64-505(k) were to be used to fight the war against drug trafficking.

After a hearing, the trial court denied the Board's motion for partial summary judgment. The trial court determined that the two statutes were irrevocably in conflict regarding the distribution of proceeds from the sale of personal property valued at less than $250,000 acquired and that § 5-64-505(k) implicitly repealed § 24-11-415 to the extent of the conflict. The trial court based its decision on the general rule that the more specific statute, § 5-64-505(k), governed the general statute, § 24-11-415. The trial court further emphasized that the legislative purpose behind § 5-64-505(k) was to provide money to combat drug trafficking. After entering its order and at the Board's request, the trial court issued a final order dismissing the cause of action.

This case turns on our interpretation of the two statutes at issue — § 24-11-415 and § 5-64-505(k). Section 24-11-415 reads:

> In all cities and towns, the proceeds derived from the sale of all confiscated goods which are required by the laws of this state to be sold if they were confiscated by a police officer of the city, or by the sheriff or Arkansas State Police within the city, shall be deposited in the city's policemen's pension and retirement fund.

Ark. Code Ann. § 24-11-415 (Repl. 1996). This statute has not been amended since its enactment in 1977. *See* 1977 Ark. Acts 745 § 1.

The relevant portion of § 5-64-505 reads:

> (k)(1) Whenever property is forfeited under subchapters 1-6 of this chapter, the circuit court shall enter an order:
>
> . . . .
>
> (ii) To sell that which is not required by law to be destroyed and which is not harmful to the public. Such property shall be sold at a public sale to the highest bidder, and if not sold at public sale, the court may permit a private sale. The proceeds of any sale and any moneys forfeited or obtained by judgment or settlement under subchapters 1-6 of this chapter shall be deposited in the special asset forfeiture fund of the attorney for the state.
>
> (2) The attorney for the state shall administer expenditures from the fund. The fund is subject to audit by the Division of Legislative Audit. Moneys in the fund must be distributed in the following order:
>
> (i) For satisfaction of any bona fide security interest or lien;
>
> (ii) For payment of all proper expenses of the proceedings for forfeiture and sale, including expenses of seizure, maintenance of custody, advertising, and court costs; and
>
> (iii) Any balance under two hundred fifty thousand dollars ($250,000) shall be distributed proportionally so as to reflect generally the contribution of the appropriate local or state law enforcement or prosecutorial agency's participation

in any of the activities that led to the seizure or forfeiture of the property or deposit of moneys under subchapters 1-6 of this chapter;

> (iv) Any balance over two hundred fifty thousand dollars ($250,000) shall be forwarded to the Department of the Arkansas State Police to be transferred to the State Treasury for deposit in the Special State Assets Forfeiture Fund for distribution as provided in subsection (l).

. . . .

(4)(i) There is created on the books of law enforcement agencies and attorneys for the state a Drug Control Fund. The Drug Control Fund shall consist of all moneys obtained under subsection (l) and other revenues as may be provided by law or ordinance. . . .[1]

> (ii) The law enforcement agencies and attorneys for the state shall submit to the State Drug Director on or before January 1 and July 1 of each year a report detailing all moneys received and expenditures made from the Drug Control Fund during the preceding six-month period.

Ark. Code Ann. § 5-64-505(k) (Repl. 1993).

█ Our rules of statutory construction and interpretation have been often repeated:

> The first rule in interpreting a statute is to construe it just as it reads by giving words their ordinary and usually accepted meaning. *Arkansas Vinegar Co. v. Ashby*, 294 Ark. 412, 743 S.W.2d 798 (1988). Statutes relating to the same subject should be read in a harmonious manner if possible. All statutes on the same subject are *in pari materia* and must be construed together and made to stand if capable of being reconciled. . . . In interpreting a statute and attempting to construe legislative intent, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate matters that

---

[1] The codified statute (§ 5-64-505(k)) appears to refer erroneously to subsection (l). The Act of the General Assembly, Act 87 of 1989, at section 4(k)(4)(i) clearly refers to subsection (1). This issue was not raised by the parties on appeal.

throw light on the matter. *Hanford Produce Co. v. Clemons*, 242 Ark. 240, 412 S.W.2d 828 (1967).

*City of Ft. Smith v. Tate*, 311 Ark. 405, 409–10, 844 S.W.2d 356, 359 (1993) (emphasis in original).

■ In considering the plain language of both statutes at issue, it is manifest that both call for a different disposition of funds when the amount raised from the sale of forfeited personal property is less than $250,000. This is apparent from the mandated creation of "Drug Control Funds" under § 5-64-505(k) and the fact that law enforcement and prosecutorial agencies which receive moneys in proportion to their involvement in seizing the property must receive the money out of those funds. On the other hand, under § 24-11-415, the money pours into the city's police pension fund regardless of which law enforcement agency confiscates the goods as long as the confiscation occurs in the city. Thus, the critical question becomes whether the two statutes govern the same subject matter. We conclude that they do in that both statues deal, in pertinent part, with confiscated or forfeited personal property. According to WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, the word "confiscate" means "to seize as forfeited to the public treasury." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 476 (1993). Thus, the term "confiscated" appears to be interchangeable with the phrase "seized or forfeited" used in § 5-64-505.

The Board urges that because the two statutes govern confiscated personal property, they are in *pari materia* and must be construed harmoniously, if capable of reconciliation. *See Salley v. Central Arkansas Transit Auth.*, 326 Ark. 804, 934 S.W.2d 510 (1996); *City of Ft. Smith v. Tate, supra*. According to the Board, § 5-64-505(k) is not clear and certain as to what purpose the proceeds under $250,000 derived from personal property forfeited in Little Rock should be utilized. The statute requires that it be distributed proportionally to law enforcement and the prosecutor participating in the seizure and forfeiture, but beyond that, according to the Board, the statute is not specific. Thus, the Board's theory goes, the money should be paid into the city's police pension fund under § 24-11-415.

■ We disagree. We read § 5-64-505(k) as providing not only that proceeds from forfeited property under $250,000 be paid to the participating law enforcement agency and prosecutor, but that those proceeds must be paid into Drug Control Funds, and that money must be used for law enforcement and prosecutorial purposes in connection with curbing drug trafficking.

■ It is true that Act 87 of 1989, which added § 5-64-505(k), had no general repealer clause. *See* 1989 Ark. Acts 87 § 4, 3rd Ext. Sess. It is further true that repeals by implication are not favored. *Donoho v. Donoho*, 318 Ark. 637, 887 S.W.2d 290 (1994); *Moore v. McCuen*, 317 Ark. 105, 876 S.W.2d 237 (1994). Yet, a repeal by implication does transpire when there exists an "invincible repugnancy" between the earlier and the later statutory provisions. *Donoho v. Donoho*, 318 Ark. at 639, 887 S.W.2d at 291.

■ Two other principles of statutory construction assist us in arriving at this conclusion. Section 5-64-505(k) is a specific statute that concerns the forfeiture of personal property related to drug trafficking. Section 24-11-415 is more general and relates to proceeds from any goods confiscated in connection with any crime within the city. A general statute must yield when there is a specific statute involving the particular subject matter. *See Donoho v. Donoho, supra; Cozad v. State*, 303 Ark. 137, 792 S.W.2d 606 (1990); *Conway Corp. v. Construction Eng'rs, Inc.*, 300 Ark. 225, 782 S.W.2d 36 (1989). There is, too, the fact that § 5-64-505(k) (Act 87 of 1989) was enacted after § 24-11-415 (Act 745 of 1977), a factor to which we have given credence in statutory interpretations. *Donoho v. Donoho, supra; Moore v. McCuen, supra; Uilkie v. State*, 309 Ark. 48, 827 S.W.2d 131 (1992).

■ In sum, we affirm the trial court's decision that § 5-64-505(k) effected a repeal by implication of § 24-11-415 in drug trafficking cases. Both statutes deal with seized personal property and in some cases they do overlap. But when the seized personal property results from drug trafficking, § 5-64-505(k) controls and the proceeds under $250,000 resulting from the forfeiture sales must be distributed into the Drug Control Funds in accordance with that statute. The clear intent behind § 5-64-505(k), as

expressed by the General Assembly in the Emergency Clause of Act 87 of 1989 and as found by the trial court, is to provide additional tools to confront drug trafficking. Proceeds flowing into the Drug Control Funds established by the Act are created for that very purpose.

Affirmed.